Your counsel in United States of America v. Darren Miller. Good afternoon, Judge. May it please the Court, my name is Brian Konoski. I am the defense attorney. I represent the appellant in this matter, Mr. Darren Miller. At this point in time, Mr. Miller is currently incarcerated pending resolution of his criminal case. Whether that's resolved by either plea or trial is yet to be seen at this point. But previously there was a bail hearing that was held by the district court. The district court found that Mr. Miller was to be detained pending trial in this matter or resolution. There were, I guess, two main issues. One issue was whether or not Mr. Miller posed danger to the community. The second issue, whether he was a substantial risk of flight. The court appeared to find that Mr. Miller was not a danger to the community, but still found that he was posed a risk of flight. The court did provide some reasons for that decision. But, Your Honors, it's my position. What were those reasons? There were a number of reasons, including that he was facing a 10-year mandatory minimum prison sentence based on the charges that he was facing at that time. That he had multiple prior serious convictions that resulted in lengthy jail terms prior to his arrest in this case. That based on his age, he's currently 50 years old, that a lengthy sentence for him would be very significant and would create tremendous incentives for him to flee. That in the past he had used aliases and that he had traveled to the Dominican Republic a few years ago. And that he had also extensive ties out of state, in the state of North Carolina. And the court found that his criminal history was also particularly troubling. So those were the reasons that I was able to... In North Carolina and the Dominican Republic, as you say. That has to do with the risk of flight that we're talking about. The fact that he traveled and apparently had connections also. Correct. I mean, it would be my position that North Carolina really isn't something that the court should have considered too much, since it's really close by. If he takes a leave to North Carolina, if that were the case, one would think that he could be retrieved rather easily from North Carolina. I can certainly understand the court being more concerned about potential ties to the Dominican Republic, but I think it was also found that he hadn't traveled to the Dominican Republic for a number of years. And as part of the proposed bail package, one of the conditions aside from home incarceration, which was proposed with electronic monitoring. So law enforcement could easily be notified if he tried to leave anywhere very quickly and respond accordingly. But one of the other... The representation was that the evidence was fairly strong against the defendant also. Yes, Judge, and I understand that's one of the factors for the court to consider. But in federal litigation, sometimes, oftentimes, cases are strong, but yet defendants are still released with bail package. And it was my position that regardless of whether the government claims that the evidence in this case is strong and whether or not there are wiretap recordings of my client making certain incriminating statements, nonetheless, the government still hadn't met its burden shown that my client is a substantial risk of flight. And getting back to the issue of whether or not the contacts to the Dominican Republic are substantial, I would argue that they're not, that Mr. Miller had not been in the Dominican Republic for a number of years. And one of the conditions that I had proposed was surrendering Mr. Miller's passport and that he not reapply for a new one. So that would eliminate that risk. Is he a native of the Dominican Republic? No, I don't believe so. So I think the totality of the circumstances... What is it, if we know from the record, that took him to the Dominican Republic? I think I'd be, I believe it was vacation, but I'd be somewhat speculating. In this particular case, Mr. Miller actually had a lot of family support when we showed up for district court arguments. There were a lot of family members here. We proposed a bond of $100,000 and we proposed other conditions such as, like I had mentioned a few moments ago, home incarceration with electronic monitoring, surrendering the passport. Let me see what else I had. The decision to deny bail was made by Judge Sullivan, is that right? That's correct, Judge. After the magistrate judge had done what? I think that we originally chose not to have a bail argument at first, so we reserved our right for a future bail argument. I think the first bail argument was heard by Judge Sullivan. It went before Judge Sullivan. Judge Sullivan denied it and then I appealed or filed a motion for emergency relief here. We also proposed travel restrictions to eastern and southern districts of New York and pretty much informed the court that we would be open to pretty much any other condition that the court would set. At the arguments, we very much explained to the court any restrictions at all that the court was open to would be fine. This may be a simple-minded question. If he's home confinement, why is he traveling to the eastern and southern districts of New York other than for court appearances? Well, I think the question . . . you're right. I think the question is whether or not if there's any travel at all that's necessary that would be with the approval of pretrial services that generally speaking it would be limited to the eastern and southern districts of New York so that you know that if he's going outside those areas that he's in violation. I think the purpose and the point of everything was to make sure pretrial services knows where he is, that he has his electronic monitoring, that he doesn't go outside these jurisdictions no matter what, and to really ensure that he's not a risk of flight. I think that with the $100,000 bond, with the proposed co-signers, with the family members that were supporting him, I think that we demonstrated that he was not a substantial risk of flight in this case. Our review is for abuse of discretion? Yes. I see that my time is up. If anybody has any additional questions, I'd be glad to answer them. Thank you very much. Thank you, Judge. May it please the Court, my name is Karen Portlock. I'm an assistant United States attorney in the Southern District of New York. I represented the government below, and I represent the government in connection with this appeal. First, I'll just state that the review of this court is for clear error, and the district court's ruling should be affirmed. The district court did not commit clear error in finding that the defendant should be detained and that he's a risk of flight. Among the reasons cited by the district court includes the significant sentence the defendant faces, multiple prior serious convictions, his use of aliases and multiple dates of birth, prior travel to the Dominican Republic, and his ties to North Carolina, where he has two prior convictions for narcotics trafficking. And what exactly is the significance of the Dominican Republic in all of this? I can clarify, Your Honor. The defendant, in an interview with pretrial services on the date of his arrest, told the officer he traveled to the Dominican Republic in 2012 for a wedding. So that's the information that we have on that. So that's not particularly relevant to your concerns? Well, it was something that Judge Sullivan mentioned. The defendant does have prior international travel, but that was noted with multiple other reasons. So as I said, the defendant has used multiple aliases, dates of birth, and has a serious criminal record. Responding to the court's questioning regarding his connections to North Carolina, the government submits those. Those are relevant to the court's consideration. And even though that's not a foreign country, it is a place where the defendant has committed crimes before, and the court found he had extensive ties there. And so that was appropriate for the court to consider in its ruling. Are we dealing with clear error or abuse of discretion? The standard of review for this court is clear error. On questions of fact, presumably. Yes, Your Honor. Furthermore, it's also stated in the record the defendant has prior convictions in North Carolina, not just for narcotics offenses, but also for fraud offenses. There were several fraud offenses he was convicted of there in 2004, including identity theft. In addition, the court noted the defendant's prior noncompliance with supervision. His parole was revoked twice, and specifically was revoked in 1993 following a violation. Unless the court... These were state proceedings in North Carolina? Yes, those are state convictions, Your Honor. But in each case there was a revocation of parole. The parole revocations were following two robbery convictions in New York State in the early 90s. The first robbery conviction was in March of 1990. He was convicted of attempted robbery in the second degree. Following his release in 1991 to parole, parole was revoked in March of 1993 due to a violation, and then he was re-paroled in May of 94. Thank you very much. Unless there are further questions, the government will rest on its submission. Counsel, do you want to take 30 seconds? But if not, feel free to submit. It's fine, Judge. Just for clarification, I think that counsel is correct. The standard is clear error, not abuse of discretion. And I would also make note that I think that the court's reliance in any way on the travel to the Dominican Republic also made this erroneous since it was clearly for tourism travel or travel for a wedding, which was the last travel he had. But that's it. Thank you very much, Your Honors. Thank you both very much. We'll reserve decision.